Kevin K. Tung, Esq., Pro Se
KEVIN KERVENG TUNG, P.C.
Queens Crossing Business Center
136-20 38th Avenue, Suite 3D
Flushing, New York 11354
(718) 939-4633

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

-----------------------------------------------------------x

KEVIN K. TUNG, ESQ.,

                    Plaintiff,

        - against -                          Docket No.: 3:19-CV-00871-FLW-TJB

SUPERIOR COURT OF NEW JERSEY,

                    Defendant.

-----------------------------------------------------------x

### DECLARATION OF KEVIN TUNG IN OPPOSITION TO DEFENDANT'S MOTION TO VACATE DEFAULT AND IN SUPPORT OF PLAINTIFF'S CROSS MOTION FOR ENTRY OF DEFAULT JUDGMENT

Kevin K. Tung, Esq., Pro Se, the Plaintiff and an attorney duly admitted to practice law

before this Court, hereby declares under penalty of perjury, pursuant to 28 U.S.C. § 1746(2) that

the following statements are true and correct:

1.    I am the plaintiff in the above-entitled action and I am familiar with the file, records

and pleadings in this action.

2.    I hereby make this declaration in opposition to defendant's motion to vacate default

and in support of plaintiff's the application to the Court for entry of default judgment against the

defendant, SUPERIOR COURT OF NEW JERSEY, pursuant to Rule 55(b) of Federal Rules of

Civil Procedure.

3.    This action was commenced against the foregoing defendant for violation of plaintiff's substantive and procedural due process, for a declaratory judgment and preliminary and permanent injunctions.

4.    Defendant SUPERIOR COURT OF NEW JERSEY was served with the summons and complaint on January 23, 2019 pursuant to Rule 4 of Federal Rules of Civil Procedure as evidenced by the proof of service on file with this court [Doc #4], and a copy of the Complaint is attached hereto as Exhibit "A".

5.    Under Rule 12(a) of Federal Rules of Civil Procedure, defendant SUPERIOR COURT OF NEW JERSEY was required to plead to or otherwise respond to the complaint by February 13, 2019. As such, the time for defendant to answer or otherwise move with respect to the complaint herein has expired, nor has the defendant sought additional time within which to respond before the expiration of the time to answer.

6.    Defendant SUPERIOR COURT OF NEW JERSEY did not timely answer or otherwise timely moved with respect to the complaint, and the time for it to answer or otherwise move has not been extended.

7.    The default of defendant was entered on February 19, 2019.

8.    As required by the Service members Civil Relief Act of 2003, I have confirmed that the defendant is not currently in active military service, because defendant, the SUPERIOR COURT OF NEW JERSEY, being a state court, is neither an infant nor an incompetent person, and is not presently serving with the armed forces.

9.    The claims of the plaintiff are for a declaratory judgment and preliminary and

permanent injunctions.

## DEFENDANT'S MOTION FAILED TO ESTABLISH A MERITORIOUS DEFENSE

10.    On or about February 27, 2019, the attorneys for the defendant moved to vacate the default entered on February 19, 2019.    Defendant's motion to vacate default shall be denied on the ground that defendant's motion failed to establish that there is a meritorious defense.

11.    "When deciding whether to relieve a party from default or default judgment, we consider the willfulness of the default, the existence of a meritorious defense, and the level of prejudice that the non-defaulting party may suffer should relief be granted." *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167 (2nd Cir. 2001), 2001U.S.App.LEXIS 8733.

12.    In the Third Circuit, the district court needs to consider the following factors in exercising its discretion in granting or denying a motion to set aside a default under Rule 55(c) or a default judgment under Rule 60(b)(1): (1) whether the plaintiff will be prejudiced; (2) whether the defendant has meritorious defense; (3) whether the default was the result of the defendant's culpable conduct. *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 1984 U.S.App.LEXIS 25286 (Motion to vacate default was denied on the ground that movant failed to establish a meritorious defense.)

13.    A meritorious defense requires a proffer of evidence which would permit a finding for the defaulting party. See, *Augusta Fiberglass Coatings, Inc. v. Foder Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988), 1988 U.S.App.LEXIS 4386, 11 Fed. R. Serv.3d 42, *Central Operating Co. v. Utility Workers of America*, 491 F.2d 245, 252 n.8 (4th Cir. 1974). "In connection with a motion to vacate a default judgment, a defendant must present more than conclusory denials

when attempting to show the existence of a meritorious defense." *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 173 (2nd Cir. 2001). The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense. See, *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2nd Cir. 1993).

14.    In the instant case, the defendant failed to establish a meritorious defense. Plaintiff in the instant action is seeking for a declaratory judgment, pursuant to 28 U.S.C. §2201 to declare that the decision and opinion of the Appellate Division of the Superior Court of New Jersey dated July 21, 2016 (Exhibit "1" annexed to the Complaint on file with this court [Doc #1]) and the decision and opinion of Judge Barry A. Weisberg of the Superior Court New Jersey dated September 12, 2012 (Exhibit "2" annexed to the Complaint on file with this court [Doc #1]) in the matrimonial action *Fou v. Fou* shall be vacated on the ground that the defendant Superior Court of New Jersey in its administrative code failed to implement necessary substantive and procedural due process procedures to safeguard the officers of the court, such as, the plaintiff, Kevin K. Tung, Esq., from being maliciously prosecuted by fraud upon the court in the *Fou v. Fou* case, to which plaintiff Tung was not a party.

15.    The undisputed evidence shows that plaintiff Tung was not given an opportunity to be heard and was not given an opportunity to defend himself in the *Fou v. Fou* case before both said courts rendered decisions criticizing plaintiff Tung for his alleged misconducts in the *Fou v. Fou* case. The substantive and procedural due process procedure could have been guaranteed had the court simply issued, *sua sponte*, an Order to Show Cause requiring the attorney to show cause

4

in the court why the court should not issue an order for sanction against the attorney as most court systems would do before imposing the sanction against the non-party attorney.

16.  The said due process was mandated by the ruling in in the United States Court of Appeals for the Third Circuit in *Bowers v. NCAA*, 475 F.3d 524 (3rd Cir 2007) (The judicial criticism against an attorney in an opinion or order rising to the level of a public reprimand is a sanction, thereby due process must be given before rendering such an opinion.)

17.  Defendant cannot create an opportunity now to correct its violation of plaintiff Tung's due process for the past proceedings. The only remedy is to set aside the unconstitutional decisions rendered by both state courts. Therefore, defendant's motion to vacate default shall be denied for failure to establish a meritorious defense.

## PLAINTIFF'S CROSS MOTION FOR A DECLARATORY JUDGMENT

18.  Furthermore, the court shall grant plaintiff Tung's cross motion for a declaratory judgment. A declaratory judgment and injunctive relief are sought upon the grounds that the above mentioned decisions and opinions were the products of fraud upon the court and were in violation of the substantive and procedural due process granted to plaintiff, a non-party to the underlying *Fou v. Fou* divorce action, by the Fourteenth Amendment to the Constitution of the United States and there has been full recognition of the due process right granted to plaintiff Tung by the ruling in the United States Court of Appeals for the Third Circuit in *Bowers v. NCAA*, 475 F.3d 524, 2007 U.S. App. LEXIS 2150. (3rd Cir 2007) (The judicial criticism against an attorney in an opinion or order rising to the level of a public reprimand is a sanction, thereby due process must be given before rendering such an opinion.)

19.    Defendant Superior Court of New Jersey cannot assert absolute judicial immunity because the instant action is not suing the Judges or Justices for their individual culpability in adjudicative functions, but an action against the court's administrative systems for failure to implement necessary substantive and procedural due process procedures to safeguard the officers of the court, such as, the plaintiff, Kevin K. Tung, Esq., from being maliciously prosecuted by fraud upon the court in the *Fou v. Fou* case, where plaintiff Tung was not a party. See, *Forrester v. White*, 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555, 1988 U.S.LEXIS 308 (1988), *Leclerc v. Webb*, 270 F.Supp.2d 779, 2003 U.S.Dist.LEXIS 12429 (Eastern District of Louisiana 2003).

20.    The *Fou v. Fou* case in Superior Court of New Jersey has been assigned to at least six (6) judges in Trial Part and Appellate Division. Not a single judge has recognized the constitutional substantive and procedural due process issue raised by the plaintiff Tung in the instant action.    This demonstrates that the Superior Court of New Jersey administrative systems failed to implement necessary substantive and procedural due process procedures to safeguard the officers of the court, because none of the judges were and are aware of such a due process procedure to protect the rights of a non-party attorney or officer of court pursuant to the Fourteenth Amendment to the Constitution of the United States and there has been full recognition of the due process right granted to plaintiff Tung by the ruling in the United States Court of Appeals for the Third Circuit in *Bowers v. NCAA*, 475 F.3d 524, 2007 U.S. App. LEXIS 2150. (3rd Cir 2007) (The judicial criticism against an attorney in an opinion or order rising to the level of a public reprimand is a sanction, thereby due process must be given before rendering such an opinion.)

21.    Plaintiff Tung made motions to intervene in both the Appellate Division of the Superior Court of New Jersey and the Superior Court, Middlesex County in the *Fou v. Fou* case attempting to set aside unlawful decisions or opinions against plaintiff Tung here.    Both courts denied the access for plaintiff to intervene without legal analysis and explanations.    Plaintiff Tung has exhausted remedies in Superior Court of New Jersey. Plaintiff Tung has no remedy at law or equity.

22.    The Complaint on file with this court [Doc #1] clearly demonstrated that the judicial criticism against plaintiff Tung contained in both said opinions rising to the level of a public reprimand, which is a sanction, thereby due process must be given before rendering such an opinion.    The Trial Court judge condemned that the English Agreement prepared by plaintiff Tung was "<u>quite frankly in the way it was presented to the Court, unfortunately rises to the level of a fraud upon the Court.</u>" (Exhibit "2" annexed to the Complaint: 9/12/2012, Hearing Transcript page 70, Lines 24-25 and page 71, Lines 1-7) "Certainly no judge reading that agreement would have any way of knowing that the separate Chinese agreements exist.    <u>At the very least, it was a knowing concealment of a relevant fact.</u>" (Exhibit "2" annexed to the Complaint: 9/12/2012, Hearing Transcript page 71, Lines 8-11)

23.    The Appellate Division decision argued on June 8, 2016 essentially repeated and adopted the reasoning of Judge Weisberg on Mr. Tung's representation of Mrs. Fou, which is essentially based on the major misrepresentations made by James Plaisted, Esq. and Peter Bracuti, Esq. that all of Chinese Agreements were shown to Mr. Tung.    Again, Mr. Tung was not a party to the appellate proceeding in the *Fou v. Fou* matter.    Mr. Tung was not permitted to file his brief

or argue his defense before the Appellate Court.    Mr. Tung was neither notified of the proceeding

of the appeal nor afforded an opportunity to argue to defend himself in the Appellate proceeding.

The Appellate Division also overlooked that Mr. Tung was not a party to the *Fou v. Fou*

matrimonial case.    The followings cited some of the languages in the Appellate Division decision.

24.    "Plaintiff claimed that the PSA differed substantially from the parties' prior Chinese

Agreements." (See, Exhibit "1" annexed to the Complaint, page 3)    "[T]he court found that

plaintiff had been manipulated in the divorce proceedings, and it was 'very troubling' that there

were inconsistences between the PSA and the Chinese Agreements.    The court noted that the

PSA, which was executed only twelve days after the Chinese Agreements of February 15, 2009,

did not mention a division of the company assets." (See, Exhibit "1" annexed to the Complaint,

page 5)

25.    The Appellate Division also noted that plaintiff's counsel had indicated he was

representing her in the proceeding, but the attorney had been "procured" by defendant, not

plaintiff.    The attorney also had admitted that defendant had been the "conduit" for all

information provided to him in the matter.    The attorney said he had prepared the PSA in

accordance with defendant's instructions.    The court found that the retainer agreement was

invalid, and that plaintiff had not been provided independent counsel.    (See, Exhibit "1" annexed

to the Complaint, pages 4-5)

26.    "The judge noted that plaintiff did not initially know that significant terms of the

Chinese Agreements had been omitted from the PSA." (See, Exhibit "1" annexed to the Complaint,

page 9-10)    "The judge noted that plaintiff had difficulty understanding the English language and

did not comprehend the differences between the Chinese Agreements and the PSA which was incorporated into the judgment."   (See, Exhibit "1" annexed to the Complaint, page 11)

27.   "[T]he court pointed out the critical differences between the Chinese Agreements and the PSA, which showed that defendant had deceived and manipulated the divorce proceedings to plaintiff's disadvantage." (See, Exhibit "1" annexed to the Complaint, page 11)

28.   The Appellate Division even referred the case to Office of Ethics for investigation of the conduct of plaintiff Tung during the representation of Mrs. Fou.   The Clerk of the Appellate Division in his letter to Office of Attorney Ethics indicated that the trial court had found that plaintiff Janet Fou had been deceived and manipulated by Plaintiff Tung. The trial court had also found that plaintiff Tung was essentially retained by defendant Mr. Fou and the trial court found that Mrs. Fou had not had the benefit of independent counsel. (See, Exhibit "1" annexed to the Complaint)

29.   Even though Judge Weisberg's opinion consists of only a finding of facts against plaintiff Tung for unethical representation in Mrs. Fou's uncontested matrimonial action, no monetary fines and disciplinary sanction were imposed.   This is a similar situation in *Bowers*. The *Bowers* Court rejected the argument that the attorneys suffered no cognizable injury to establish Article III standing.   See, *Bowers v. NCAA*, 475 F.3d 524, 543, 2007 U.S. App. LEXIS 2150.

30.   The Third Circuit found that there is some disagreement among the Courts of Appeals as to whether and when a court's statement in a judicial opinion amounts to a sanction "affecting an attorney's professional reputation" and thus "imposing a legally sufficient injury to support

appellate jurisdiction."    Most courts agree that mere judicial criticism is insufficient to constitute

a sanction.    In addition, courts are in near complete agreement that an order rising to the level of

a public reprimand is a sanction. See, *Bowers v. NCAA*, 475 F.3d 524, 543.

31.    In short, plaintiff Tung demonstrated in the Complaint that the judicial criticism

against plaintiff Tung contained in both said opinions rising to the level of a public reprimand,

which is a sanction, thereby due process must be given before rendering such opinions as a matter

of law.

32.    For the foregoing reasons, this Court shall grant the relief sought in the First Claim

in the Complaint that this Court declare that the decision and opinion of the Appellate Division of

the Superior Court of New Jersey dated July 21, 2016 and the decision and opinion of Judge Barry

A. Weisberg of the Superior Court New Jersey dated September 12, 2012 in the matrimonial *Fou*

*v. Fou* action violated plaintiff Tung's rights to substantial and procedural due process under the

Fourteenth Amendment to the Constitution of the United States and the full recognition of the due

process right granted by the ruling in the United States Court of Appeals for the Third Circuit in

*Bowers v. NCAA*, 475 F.3d 524, 2007 U.S. App. LEXIS 2150 (The judicial criticism against an

attorney in an opinion or order rising to the level of a public reprimand is a sanction, thereby due

process must be given before rendering such an opinion).    As a result, both of the said decisions

must be set aside, because the injury to plaintiff Tung here cannot be determined or mitigated

unless the said decisions and opinions of the State courts are set aside. (See, Exhibit "19", public's

negative perception of the *Fou v. Fou* decision in the internet, a copy of the article on internet

annexed to the Complaint on file with this court [Doc #1])

## PRELIMINARY INJUNCTION

33.    In the Second Claim for Relief, plaintiff Tung is seeking a preliminary injunction to maintain the status quo, restraining the enforcement of any subsequent related judgments and orders issued by the Superior Court of New Jersey in the *Fou v. Fou* matrimonial action and in the *Fou v. Tung* malpractice action against plaintiff Tung pending further state court's determinations in the wake of setting aside both unconstitutional decisions of Trial Court and Appellate Division in the First Claim for Relief sought in the Complaint.

34.    In the Third Circuit, "[t]o obtain a preliminary injunction, the moving party must show (1) a reasonable probability of eventual success in the litigation, and (2) that irreparable injury will ensure if relief is not granted.    In addition, the court may consider (3) the possibility of harm to other interested persons from the grant or denial of relief, and (4) the public interest." *Kennecott Corp. v. Smith*, 637 F.2d 181, (3rd Cir. 1980), 1980 U.S.App.LEXIS 11332.

35.    In the instant case, plaintiff Tung has demonstrated in his Complaint an extremely high probability of eventual success in the litigation. There is a wrong, there is a remedy. Miscarriage of justice has occurred in the Trial Court and Appellate Division of the Superior Court of New Jersey in the *Fou v. Fou* matrimonial action as well as in all subsequent related proceedings against the non-party attorney, the plaintiff Tung here.

36.    The instant case presents two major legal issues.    First, the instant action presents a substantial constitutional question arising under the Constitution of the United States and there has been full recognition of the due process right granted to the plaintiff Tung by the ruling in the United States Court of Appeals for the Third Circuit in *Bowers v. NCAA*, 475 F.3d 524, 2007 U.S.

App. LEXIS 2150.   Both courts in the Superior Court of New Jersey rendered decisions with findings of facts against the non-party attorney plaintiff Tung here in the uncontested matrimonial action *Fou v. Fou* without first giving the non-party attorney an opportunity to be heard and said decisions contained judicial criticism against the non-party attorney in decisions and opinions rising to the level of a public reprimand, which has been determined by Third Circuit as a sanction, thereby due process must be given before rendering such opinions and decisions.

37.    Second, the instant case presents a classic fraud upon the court the *Throckmorton* doctrine that was set forth in *United States v. Throckmorton*, the relief should been granted on the ground that "some fraud practiced directly upon the party seeking relief against the judgment or decree, that party has been prevented from presenting all of his case to the court." *United States v. Throckmorton*, 98 U.S. 61, 66 (1878).   This legal principal or doctrine was set forth in place over one hundred years ago.   The miscarriage of justice was repeated in the *Fou v. Fou* case again. When the attorneys for Janet Fou committed a fraud upon the Trial Court of the Superior Court of New Jersey by presenting false evidence and certifications against the non-party attorney, plaintiff Tung was not afforded an opportunity to defend himself or present his case to the State Trial Court before the findings of facts was rendered against plaintiff Tung. Based on these legal principals, the decisions or opinions of the Trial Court and the Appellate Division of the Superior Court of New Jersey must be set aside for the nature of the fraud behind the plaintiff's back. The injury to plaintiff Tung here cannot be determined or mitigated unless the said decisions and opinions of the State courts are set aside. (See, Exhibit "19", public's negative perception of the *Fou v. Fou* decision in the internet, a copy of the article on internet annexed to the Complaint on file with this

court [Doc #1]).

38.    In addition, it is not a fair play, almost unheard of, and against our very basic and fundamental judicial systems to require the plaintiff Tung here to defend himself in all subsequent malpractice court proceedings against the findings of facts affecting plaintiff Tung resulted from different prior court proceedings where he was not such a party as to present his defenses. Worse still, all related subsequent court proceedings heavily relied on the Superior Court of New Jersey's decisions and opinions against plaintiff Tung, which were the results of unconstitutional administrative procedures and fraud upon the court, and rendered decisions against the plaintiff Tung here.    Essentially, the miscarriage of justice in the Superior Court of New Jersey against plaintiff Tung was equivalent to a requirement that plaintiff Tung in all the related subsequent cases prove his innocence against the findings of facts rendered in a different prior court proceeding where Tung was not a party.

## THE FRAUD UPON THE COURT

39.    The standard for determination of fraud upon the court is clear and convincing standard, not beyond reasonable doubt.    See, *Triffin v. Automatic Data Processing, Inc.*, 411 N.J.Super. 292, 986 A.2d 8, 2010 N.J.Super.LEXIS 3.    Also see, *Baxter v. Bressman*, 874 F.3d 142, 2017 U.S.App. LEXIS 20340 (A court may set aside a judgment based upon its finding of fraud on the court when an officer of the court has engaged in egregious misconduct.    Such a finding must be supported by clear, unequivocal and convincing evidence of (1) an intentional fraud; (2) by an officer of the court; and (3) which is directed at the court itself.    In addition, fraud on the court may be found only where the misconduct at issue has successfully deceived the court.)

The plaintiff Tung has demonstrated that Mr. Plaisted had committed a fraud upon the court by clear and convincing evidence in the Statement of Fact section in the Complaint on file with this court [Doc #1]) If plaintiff Tung had been given the opportunity to defend or present his case in the trial court, this fraud upon the court would have been prevented.

40.    The power to vacate a judgment that has been obtained by fraud upon the court is inherent in courts.    See, *Universal Oil Products Co. v. Root Ref. Co.*, 66 S.Ct. 1176, 1179, (1946), 328 U.S. 575, 580, 90 L.Ed 1447.    A decision produced by fraud on the court is not in essence a decision at all and never becomes final.    See, *Kenner v. Commissioner of Internal Revenue*, 387 F.2d 689, 691 (7th Cir. 1968), *certiorari denied*, 89 S.Ct. 121, 393 U.S. 841, 21 L.Ed.2d 112.    Rule 60(b) provides the power to this court to set aside a judgment for fraud upon the court.    See, *Hazel-Atlas Glass Company v. Hartford Empire Company*, 64 S.Ct. 997 (1944), 322 U.S. 238, 88 L.Ed. 1250.

41.    The record in the instant case unequivocally supports such a finding of fraud upon the court.    Mr. Plaisted is an officer of the court.    His associate Peter Bracuti stated that Janet Fou's false certification dated September 28, 2011 (Exhibit "5", annexed to the Complaint on file with this court [Doc #1]) was prepared under the direction and supervision of Mr. Plaisted. (See, 2nd page in Exhibit "B")    Mr. Plaisted did not deny that the record was not accurate for his misrepresentation made to the court in his response to Office of Attorney Ethics dated August 15, 2018 (Exhibit "C") Mr. Plaisted disregarded the fact that his co-counsel had informed him that not all of the Chinese Agreements were given to Mr. Tung. (Exhibit "7", annexed to the Complaint on file with this court [Doc #1]) Mr. Plaisted disregarded the fact that his own client Mrs. Fou's

testimony during depositions, where Mr. Plaisted participated, that not all Chinese Agreements were given to Mr. Tung. (Exhibit 8, annexed to the Complaint on file with this court [Doc #1]) Mr. Plaisted even asked Mr. Fou during the hearing and Mr. Fou also informed him that not all Chinese Agreements were given to Mr. Tung. (Page 51 – 52, in Exhibit 2, annexed to the Complaint on file with this court [Doc #1]).

42.   Subsequently on the same day, during the hearing before Judge Barry A. Weisberg, James Plaisted, Esq. in his closing argument, knowing that Mr. Tung was never given all of the Chinese Agreements in prior proceedings, intentionally made a material misrepresentation to the Court.   He stated that "if one wanted to know and see a moment of truth and somebody who was deceived in terms of the agreements, I would submit the agreements themselves show it.   The Chinese agreements are executed the very day.   They go to Mr. Tong (Tung) and they contained these promises that she (Janet Fou) understood were binding.   And he (Mr. Tung) then controls the proceedings.   And I would ask Your Honor to make this right and upset agreement. (PSA)" (Page 60-61, Exhibit 2, annexed to the Complaint on file with this court [Doc #1]).   This material misrepresentation by Mr. Plaisted to Court is more than not being candor to Court but to a level of a fraud upon the Court.

43.   For this undisputed fact between Mr. Fou and Mrs. Fou, Mr. Plaisted knew exactly the fact that not all of the Chinese Agreements were given or shown to Mr. Tung.   Mr. Plaisted still misrepresented to the Court that all Chinese Agreements were given to Mr. Tung. Judge Weisberg was successfully deceived by Mr. Plaisted and the decision of Judge Weisberg were manifested with material misrepresentations made by Mr. Plaisted and Mr. Bracuti.   (Page

15

65 – 72, in Exhibit 2, annexed to the Complaint on file with this court [Doc #1]) The record shows at no time upon learning the false information were presented to Court, Mr. Plaisted and his associates had made any effort to inform the Court that material misleading information was made to the court.

44.    Attorney James Plaisted's material misrepresentation in open court was just a portion of the misrepresentations that he knew were not true, when he made the misrepresentation to the Court to set aside the PSA.    Mr. Plaisted's material misrepresentation was actually in conjunction with the Certification of Janet Yijuan Fou dated September 28, 2011 made in support of her motion to set aside the PSA.    Upon information and belief, Peter Bracuti, Esq. was the attorney who prepared this false certification of Janet Yijuan Fou. (Exhibit "5", annexed to the Complaint on file with this court [Doc #1])

45.    On September 30, 2011, the said certification was filed with the Court.    In numerous sections, the certification tried to make the Court to believe that the Chinese Agreements were not incorporated into the English Agreement prepared by the plaintiff Tung, but without informing the Court that Mr. Tung was not shown or given all of the Chinese Agreements.    (See, paragraph 7 and 22 in Exhibit "5", annexed to the Complaint on file with this court [Doc #1])

46.    Specifically, in paragraph 22, Janet Fou stated that "[t]his English Agreement did not reference any of the prior 'Chinese' agreements executed between myself and the Defendant and by signing this English Agreement, it was never my intention to waive any of the various entitlements afforded to me pursuant to our agreements written in Chinese and two of which were executed virtually simultaneously with the English Agreement."    If the plaintiff Tung was not

16

advised the existence of the various Chinese Agreements, how could he make the reference to the Chinese Agreements. Mr. Tung was not a party in the hearing to voice his side of the story.

47. Again, in paragraph 26 of the said certification, Mrs. Fou stated that "[t]he English Agreement which was presented and filed with the Court was materially false and omitted material particulars of the Chinese Divorce Agreements, two of which were executed virtually contemporaneously with the English Agreement." Clearly, this was a material misrepresentation, and the Court was not advised that not all of the Chinese Agreements were shown to the plaintiff Tung. Again, Mr. Tung was not a party in the hearing to voice his side of the story.

48. In paragraph 32, Janet Fou finally pointed her figures at the plaintiff Tung. "[W]hen I inquired of the Defendant (Mr. Fou) as to when he would begin to honor the Chinese Agreements which we had signed, most specifically the Agreement to provide an accounting as to the family company and transfer my ½ interest therein. At that time, Defendant indicated that he would not do so because the critical terms of the Chinese Agreements were omitted from the divorce decree and/or the English Agreement provided to the Court for incorporation into our Final Judgment of Divorce. It was based upon these statements that I began to question the appropriateness of Mr. Tung's representation of me and Defendant's role in orchestrating my execution of an English Agreement, which failed to mention our previous executed agreements." Obviously, this was a material misrepresentation to Court, Mrs. Fou knew that the Plaintiff Tung was not provided with all the Chinese Agreements, when English Agreement was prepared by Mr. Tung.

49. In addition, Janet Yijuan Fou made a false representation to Court that plaintiff Tung here represented both parties in *Fou v. Fou*, (See, paragraphs 16, 17, 18 in Exhibit "5", annexed to

the Complaint on file with this court [Doc #1]) Said representations were not true and directly against her own testimony in the open Court. (See, Transcript of 5/4/2009, Pages 4, Lines 21-25, and Page 25, Lines 1-9, Exhibit "D" attached to Exhibit 5, annexed to the Complaint on file with this court [Doc #1])   She specifically told the Court that her husband had a right to a lawyer, but the husband said he did not need it.   This was her state of mind then that Mr. Tung was not representing her husband. Mrs. Fou had signed the Confidential Litigation Information Sheet, which indicated I was her attorney only. (See, Exhibit "D")   All of the documents submitted to Court indicated that Mr. Joe Zhouwu Fou was a *pro se* defendant and the Plaintiff Tung only represented Mrs. Fou as the plaintiff's attorney. (Exhibit "D")

50.   With reference to the misrepresentation that the plaintiff Tung virtually had no communications with Mrs. Fou during the representation, Mrs. Fou could have conversations with Mr. Tung to ask questions for at least four times on 2/15/2009, 2/27/2009, 4/18/2009, and 5/4/2009 before the judgment of divorce was entered. (Exhibit "E") At least two of dates were not in the presence of Mr. Fou. She admitted during the malpractice trial and deposition.   In fact, there was nothing to prevent her from contacting the plaintiff Tung for any concerns she might have. All of those misrepresentations made were for a sole purpose to have a false ground to set aside the PSA and later to start a fraudulent legal malpractice against the plaintiff Tung.   Judge Barry A. Weisberg was clearly misled by those misrepresentations when decided the motion to set aside the PSA in the absence of the plaintiff Tung in the proceedings.

51.   Furthermore, Attorneys for plaintiff Janet Fou's material misrepresentations to Court were not something that can be excused or immaterial.   The fact that Judge Barry A. Weisberg

made his decision to set aside the PSA was mainly based on the false facts mispresented to him during the hearing and on the motion papers.    Both Mr. Plaisted and Mr. Bracuti's material misrepresentations had a major impact on Judge Barry A. Weisberg's decision as well as the opinion of the Appellate Division. (Exhibit 1, annexed to the Complaint on file with this court [Doc #1])

52.    Therefore, this Court shall find that Mr. Plaisted and Mr. Bracuti had committed a fraud upon the court by clear and convincing evidence. The Supreme Court of New Jersey has indicated that "[p]erjurious testimony alone and not accompanied or concealed by other and collateral acts of fraud may be a ground for relief [from judgment] as a fraud upon the court in a proper case." *Shammas v. Shammas*, 9 N.J. 321, 328, 88 A.2d 204 (1952).

53.    Exhibit "F" shows a document title affidavit of Janet Fou. This document was produced by the attorney for Janet Fou, bearing bates numbers JFM01441-1445. In paragraphs 44-47, the attorney for Janet Fou tried to create an affidavit of Janet Fou to attest a fact that plaintiff Tung failed to incorporate the terms in Chinese Agreements into the English PSA. Obviously, Janet Fou did not sign this affidavit, because she knew this was not true.    The attorneys for Jenat Fou still went ahead to pursue a false malpractice case against plaintiff Tung here based on the false fact that plaintiff Tung here was given all Chinese agreement and intentionally left the material terms in the Chinese agreements out in the English PSA.

54.    The above said documents can be admitted into evidence because they fit into a "crime or fraud" exception to privilege. (The privilege shall not extend to a communication in the course of legal service sought or obtained in aid of commission of a crime or a fraud. N.J.S.A.

2A:844-20(2)(a)), Also See, *Fellerman v. Bradley*, 99 N.J. 493 (1984); 493 A.2d 1239, 1985 N.J. Lexis 2349.

55.    For the foregoing reasons, plaintiff Tung has demonstrated that he has an extremely high probability of eventual success in the litigation.

## NO HARM TO OTHER INTERESTED PERSONS

56.    Janet Fou is the only person who could claim a possible harm, if the Temporary Restriction Order ("TRO") is granted by this Court.    Balancing the equity, this Court should grant the TRO requested herein.    The irreparable harm is huge if TRO is not granted to maintain the status of quo.    Janet Fou now has obtained a final judgment in the amount of $1,547,063.31 (See, Exhibit "G", a copy of final judgment) on January 11, 2019 against the plaintiff and his law firm here.    If no TRO is granted, plaintiff's law firm and his personal financial affairs can be irreparably harmed.    Janet Fou, however, will suffer no harm, because she was and is not entitled to any of the amount of damages awarded to her in the appeals or other subsequent state court proceedings after the decisions and opinions of both courts are vacated.    In any case, she should be judicially and equitable estopped.

57.    The purpose of the judicial estoppel doctrine is to protect "the integrity of the judicial process." *Cummings v. Bahr*, 295 N.J. Super. 374, 387, 685 A.2d 60 (App. Div. 1996)    A threat to the integrity of the judicial system sufficient to invoke the judicial estoppel doctrine only arises when a party advocates a position contrary to a position it successfully asserted in the same or a prior proceeding.    *Chattin v. Cape May Greene, Inc.*, 243 N.J. Super. 590, 620, 581 A.2d 91 (App.Div. 1990), aff'd o.b., 124 N.J. 520, 591 A.2d 943 (1991); *Brown v. Allied Plumbing &*

*Heating Co.*, 129 N.J.L. 442, 446, 30 A.2d 290 (Sup,Ct, aff'd, 130 N.J.L. 487, 33 A.2d 813 (E. & A. 1943); *Bell Atl. Network Servs., Inc. v. P.M. Viedo Corp.*, 322 N.J. Super. 74, 95, 730 A.2d 406 (App.Div.), *certify. denied*, 162 N.J. 130, 741 A.2d 98 (1999). "The principle is that if you prevail in Suit #1 by representing that A is true, you are stuck with A in all later litigation growing out of the same events." *Eagle Found., Inc. v. Dole*, 813 F.2d 798, 810 (7th Cir. 1987).

58.    "The doctrine of equitable estoppel seeks to prevent injustice when an individual detrimentally and predictably relies on the misrepresentation of another." *Nagle v. Acton-Boxborough Reg'l Sch. Dist.*, 576 F.3d 1,3 (1st Cir. 2009) A party seeking to invoke equitable estoppel must establish three elements: "(1) a misrepresentation by another party; (2) which [the party] reasonably relied upon; (3) to [the party's] detriment." *United States v. Asmar*, 827 F.2d 907, 912 (3rd Cir. 1987); see *Heckler v. Cmty. Health Servs. Of Crawford Cty., Inc.*, 467 U.S. 51, 59-61, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984).

59.    In the *Fou v. Fou* case, Janet Fou for the purpose to make false Medicaid application, she misrepresented to the Court that she did not have assets and funds, even if she just received $500,000 distribution from her husband.    She also made a misrepresentation to the Medicaid that she did not have assets and funds. (See, Exhibit 3 annexed to the Complaint on file with this court [Doc #1]) She intentionally withheld the critical financial information from her attorney, plaintiff Tung here and the Court in the *Fou v. Fou* case. She intentionally hid the Chinese Agreements from her attorney and the Court in *Fou v. Fou* case. She never reported on income tax returns for the $2.2 Million profit earned.    (See, paragraphs 49 – 61 of the Complaint)    Therefore, she successfully made that position and her application was granted by the Medicaid based on the false

fact that she did not have assets and funds.    As a result of Janet Fou's taking a position in the *Fou v. Fou* matter that she failed to disclose her critical financial information to her attorney and the court and intentionally to withhold the critical financial information and the Chinese Agreements from her attorney and the court in *Fou v. Fou* matter, she is judicially barred to commence a malpractice claim against her attorney, Mr. Tung, in the subsequent and related matters later to claim that she has over millions of dollars in assets.

60.    In *Fou v. Fou* matter, even Judge Weisberg stated in his unconstitutional opinion that failure to inform the court of the existence of the Chinese Agreements rose to the level of a fraud upon the court and at the very least it was a knowing concealment of a relevant fact.    (See paragraph 84 of the Complaint) Now, we all know the person who intentionally concealed the fact of the existence of Chinese agreements was Mrs. Janet Fou, not plaintiff Tung in *Fou v. Fou* matter. Especially, Judge Weisberg declared that all Chinese Agreement were invalid. (See, page 71 in Exhibit 2, annexed to the Complaint on file with this court [Doc #1])    Under the circumstance, it would be legally impossible to find plaintiff Tung here to commit a malpractice for failure to negligently incorporate the terms contained in the invalid Chinese Agreements into the English PSA, because the invalid Chinese Agreements were hidden from plaintiff Tung and the invalid Chinese Agreements were not prepared by plaintiff Tung here.    The failure to incorporate terms in the invalid Chinese Agreements into the English PSA is an equivalent to shooting at a dead person, a legal impossibility, because the shooter can never legally be convicted for murder. Therefore, plaintiff Tung reasonably relied on Janet Fou's misrepresentations in the *Fou v. Fou*

matter to prepare the English PSA.    Janet Fou is equitably estopped from asserting a malpractice claim against plaintiff Tung here.

61.    Moreover, Judge Weisberg's opinion actually has more of an adverse effect upon plaintiff Tung in all subsequent court proceedings against plaintiff Tung here.    When judges in all the subsequent court proceedings against plaintiff Tung cannot distinguish the mistake made by Judge Weisberg, a jury consisting of layman jurors cannot be expected to distinguish the mistakes made by the Courts without Court's proper jury instructions.    The plaintiff Tung here has demonstrated that in the Section of Fruit of the Poisonous Tree Doctrine on Judge Weisberg's Decision in the Complaint on file with this court [Doc #1]) (See, paragraph 63 through 71 in the Complaint) there were adverse effects upon plaintiff Tung in all subsequent court proceedings against plaintiff Tung here.    Therefore, in the event of setting aside decisions and opinions of Trial Court Judge Weisberg and the Appellate Division, Janet Fou cannot be prejudiced, because she is not entitled to any damages she could claim on the ground of judicial estoppel and equitable estoppel. Mrs. Janet Fou should be equitably barred from claiming later in the malpractice case against her attorney that she had Millions of Dollars of assets.    Our legal system is a court of equity, not a place where Mrs. Fou can pick and choose to lie about her assets as she wishes.    Mrs. Fou should not be allowed to mislead the government and court one day by stating that she was in poverty, and later she could go to court to tell a totally different story just as she had already misrepresented to the government agency or in the court proceedings before.    Public interest mandates that Mrs. Fou should be barred from playing with our systems in the way she likes to play.

WHEREFORE, plaintiff requests that the defendant's motion to vacate the default be denied and the plaintiff's motion for default judgment against defendant SUPERIOR COURT OF NEW JERSEY be entered.

I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge, information and belief.

Dated: March 20, 2019

Kevin K. Tung, Esq., Pro Se
Queens Crossing Business Center
136-20 38th Ave., Suite 3D
Flushing, New York 11354
(718) 939-4633
ktung@kktlawfirm.com