**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| KEVIN KERVENG TUNG,<br><br>Plaintiff,<br><br>v.<br><br>STUART RABNER, in his official capacity as Chief Justice of the Supreme Court of the State of New Jersey, et al.,<br><br>Defendants. | Civil Action No. 19-871 (MAS) (TJB)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendants Stuart Rabner, Chief Justice of the New Jersey Supreme Court, Glenn A. Grant, Administrative Director of the New Jersey Courts, and Carmen Messano, Presiding Judge of the New Jersey Superior Court, Appellate Division's ("Defendants") Motion to Dismiss Plaintiff Kevin Kerveng Tung's ("Tung" or "Plaintiff") Amended Complaint. (ECF No. 30.) Plaintiff opposed. (ECF No. 31.) The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Rule 78.1. For the reasons set forth below, Defendants' Motion to Dismiss is granted.

**I.     BACKGROUND**

Tung is an attorney licensed to practice law in the state of New Jersey. (Am. Compl. ¶ 13, ECF No. 20.) In 2009, Tung represented Mrs. Janet Fou in a no-fault divorce proceeding with her husband, Mr. Joe Fou. (*Id.* ¶ 21.) According to Tung, during this representation, he "prepared an English [language p]roperty [s]ettlement [a]greement for the Fous." (*Id.* ¶ 22.) Tung maintains that

at the time of the representation, he understood that "the only binding [p]roperty [s]ettlement [a]greement was going to be the one [he] was going to prepare" for the Fous. (*Id.* ¶ 64.) Tung acknowledges, however, that the Fous asked him to notarize, but not review, a "Chinese Agreement" between Mr. and Mrs. Fou "regarding their divisions of properties." (*Id.* ¶¶ 22, 71.)

Two years after the conclusion of the divorce proceeding, Mrs. Fou moved to set aside the final judgment of divorce. (*Id.* ¶ 29.) With the assistance of new attorneys, Mrs. Fou argued that there were actually four Mandarin agreements between the couple. (*Id.* ¶ 51.) Mrs. Fou alleged that the property settlement prepared by Tung differed substantially from these documents. (*Id.* ¶ 55.) According to Mrs. Fou, Tung's services were procured by her husband and Tung dealt largely with Mr. Fou rather than with her, his actual client. (Janet Fou Cert. ¶ 16, Ex. 5 to Am. Compl., ECF No. 20-1.) When moving to reopen the divorce proceedings, Mrs. Fou maintained that she "question[ed] the appropriateness of Mr. Tung's representation of me and [Mr. Fou's] role in orchestrating my execution of an English [a]greement, which failed to mention our previous[ly] executed agreements." (Am. Compl. ¶ 40.)

In his Amended Complaint, Tung presents a different version of events. (*Id.* ¶ 22.) Tung contends that he was only made aware of one of the Mandarin agreements. According to Tung, Mrs. Fou misled him with respect to the agreements and the couple's financial status because she was attempting to commit Medicaid fraud. (*Id.* ¶¶ 22-23.) Tung does not, however, appear to contest the fact that he largely interacted with and received information from Mr. Fou, even though Mrs. Fou was his client. (*See* Sept. 12, 2012 Hr'g Tr. 65:21-66:4, Ex. 2 to Am. Compl., ECF No. 20-1.) Tung testified at the reopening proceeding pursuant to a subpoena but he did not otherwise take part in these proceedings. (Am. Compl. ¶ 63.)

On September 12, 2012, the New Jersey Superior Court accepted Mrs. Fou's version of events and granted the motion to set aside the final judgment of divorce. (*Id.* ¶ 44.) While ruling from the bench, the judge made several negative comments about Tung's conduct in the divorce action. The judge suggested that Tung had completely failed in his duty to provide independent representation to Mrs. Fou. (*See* Sept. 12, 2012 Hr'g Tr. 64:13-65:5, 69:19-70:12 (suggesting that Tung "represented both sides" violating "one of the most basic rules of an attorney/client relationship" and that "there [was] a complete failure . . . to have independent counsel and there's an illusion of independent counsel which is grossly misleading").) The court also found that the retainer agreement between Tung and Mrs. Fou "doesn't even begin to satisfy" New Jersey state rules on retainer agreements for attorneys representing a party in a matrimonial dispute. (*Id.* at 66:5-13.) The court went on to find that the property settlement's submission in the divorce proceeding amounted to "a fraud upon the court." (*Id.* at 71:2-7.) The court did not, however, specifically state who committed this fraud. In fact, the court appears to have largely placed blame for this misrepresentation on Mr. Fou. The state court found that Mr. Fou was "the conductor or maestro of . . . these proceedings." (*Id.* at 69:9-18.) Furthermore, at no point in the ruling did the judge specifically note that he was sanctioning Tung. Nor did the court make a factual finding that Tung's conduct was sanctionable. On July 8, 2016, New Jersey's Appellate Division affirmed the trial court's decision to set aside the final judgment of divorce. (Am. Compl. ¶¶ 54, 81.) The Appellate Division also referred Tung to the Office of Attorney Ethics for further investigation into his conduct in the divorce action. (*Id.* ¶ 81.) This matter was still pending when Tung filed the present action. (*Id.*)

Mrs. Fou then sued Tung for malpractice in New Jersey Superior Court. (*Id.* ¶ 78.) Plaintiff participated in these proceedings as the defendant. (*Id.* ¶¶ 78-86 (describing Tung's motion

3

practice, pre-trial conference participation, and appeals in the *Fou v. Tung* malpractice action).) Tung alleges that during the malpractice action, the opinion from the divorce action was used against him over his objection. (*Id.* ¶¶ 78-86.) Tung also accused Mrs. Fou and her new attorneys of making numerous misrepresentations to the court to secure the reopening of the final judgment of divorce. (*See generally id.* ¶¶ 24-62.) Notwithstanding these contentions, on April 25, 2018, a jury in the Superior Court malpractice action found Tung liable for malpractice and awarded Mrs. Fou a $500,000 judgment. (*Id.* ¶ 85.)

Following the malpractice jury verdict and years after he was subpoenaed to testify in the reopened divorce proceedings, Tung attempted to intervene as a party to the divorce proceedings at both the appellate and trial levels. (*Id.* ¶¶ 87-88.) The Appellate Division denied Tung's motion to intervene on November 30, 2018. (*Id.* ¶ 87.) The Superior Court denied his motion to intervene on December 18, 2018. (*Id.* ¶ 88.)

In 2019, Tung filed the instant action against the Superior Court of New Jersey under 28 U.S.C. § 2201. Tung argued that the Superior Court violated his substantive and procedural due process rights when it vacated the final judgment of divorce. (Compl. ¶ 1, ECF No. 1.) Moreover, Tung maintained that the Appellate Division violated his substantive and procedural due process rights when it affirmed the trial court's decision to set aside the final judgment of divorce without providing him an opportunity to intervene or present a defense. Tung also maintained that this allegedly unconstitutional action tainted his malpractice case and rendered him unable to receive a fair trial. (*Id.* ¶ 69.) In a November 26, 2019 Opinion, Chief Judge Wolfson dismissed the initial Complaint on sovereign immunity grounds. (Nov. 26, 2019 Op. 6-8, 12, ECF No. 17.) While dismissing the initial Complaint, Judge Wolfson granted Tung leave to file an amended complaint

in which he proposed to seek prospective relief from state officers pursuant to the *Ex Parte Young* doctrine. (*Id.* at 10-11.)

Tung has since filed an Amended Complaint. The Amended Complaint brings similar claims as the initial Complaint, although it names judges and court administrators as Defendants instead of the New Jersey Superior Court. The named Defendants are the Chief Justice of the New Jersey Supreme Court, the Acting Administrative Director of the New Jersey Courts, and the Presiding Judge for Administration for the Appellate Division. (Am. Compl. ¶¶ 1-2.) Tung contends that these three officials are responsible for overseeing the administration of the New Jersey court system and, therefore, are responsible for the policies that injured his substantive and procedural due process rights. (*Id.*) In his Amended Complaint, Tung seeks a declaratory judgment that the decisions and opinions reopening the divorce case violated his due process rights, along with an injunction removing them from the public domain. (*Id.* at 40-42.) Tung also seeks an injunction requiring "the New Jersey State court systems[] to implement pertinent substantive and procedural due process procedures" to ensure "plaintiff or attorneys similarly situated . . . [are] given an opportunity to defend themselves in the future" when matters of attorney discipline come up in cases where they are not a party to the action. (*Id.*) Defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) on the grounds of Eleventh Amendment immunity, the *Rooker-Feldman* doctrine, and *Younger* abstention. (Defs.' Moving Br. 2, ECF No. 30-4.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), "a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim." *In re Schering Plough Corp. Intron/Temodar*, 678 F.3d 235, 243 (3d Cir. 2012). Eleventh Amendment immunity may be invoked through a 12(b)(1) motion because Eleventh Amendment immunity deprives the court of subject matter

jurisdiction. *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 n.2 (3d Cir. 1996) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984)). Because Eleventh Amendment immunity is an affirmative defense, however, the burden of demonstrating the immunity lies with the defendant who is asserting it. *Carter v. City of Philadelphia*, 181 F.3d 339, 347 (3d Cir. 1999). Where, as here, the State "present[s] a facial challenge to the Court's subject matter jurisdiction, 'the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff.'" *Rich v. New Jersey*, No. 14-2075, 2015 WL 2226029, at *5 (D.N.J. May 12, 2015) (quoting *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)).

## III. DISCUSSION

### A. The *Ex Parte Young* Exception to Eleventh Amendment Immunity Does Not Apply to Tung's Claims

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Amendment provides "states with immunity from suit . . . in federal court not only from suits brought by citizens of other states, but also from suits brought by their own citizens." *Gattuso v. N.J. Dep't of Human Servs.*, 881 F. Supp. 2d 639, 645 (D.N.J. 2012) (citing *Hans v. Louisiana*, 134 U.S. 1, 13-14 (1890)). This immunity extends to suits against state officers acting in their official capacity. *Pennsylvania Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002). Defendants maintain that Tung's claims are barred by the Eleventh Amendment. (Defs.' Moving Br. 5-9.)

In response to the Defendants' Motion to Dismiss, Tung asserts an exception to the State's Eleventh Amendment immunity: the *Ex Parte Young* doctrine. (Pl.'s Opp'n Certification ("Pl.'s

6

Cert.") 7-8, ECF No. 31.) Under *Ex Parte Young*, "individual state officers can be sued . . . for prospective injunctive and declaratory relief to end continuing or ongoing violations of federal law." *MCI Telecom Corp. v. Bell Atl. Pa.* 271 F.3d 491, 506 (3d Cir. 2001) (citing *Ex Parte Young* 209 U.S. 123 (1908)). *Ex Parte Young* is based on the theory that a state officer has no authority to violate the federal law and thus, when the official does so, even pursuant to state law, the official "is stripped of his official or representative character and becomes subject to the consequences of his individual conduct." *Id.*

The Supreme Court has found that the *Ex Parte Young* exception should not be given an expansive scope. *Pennhurst*, 465 U.S. at 102-03. For *Ex Parte Young* to apply, a suit must seek both prospective relief and a remedy to an ongoing or continuing violation of federal law. *Green v. Mansour*, 474 U.S. 64, 68 (1985); *see also Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (holding that whether *Ex Parte Young* applied required a "straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective"); *Christ the King Manor, Inc. v. Sec'y of HHS*, 730 F.3d 291, 318-19 (3d Cir. 2013) (holding that *Ex Parte Young* only allows suits "that seek prospective relief to end an ongoing violation of federal law" and finding that in making these determinations, courts "must look to the substance rather than the form of the relief requested" (internal quotation marks and citations omitted)).

### 1. Tung Does Not Allege a Violation of Federal Law

Tung's claims fail because he cannot demonstrate that the Defendants violated his federal rights. The Amended Complaint directs the Court to several state court findings made during the reopened divorce proceedings. Tung alleges that these findings amounted to a public reprimand rising to the level of a sanction. His central claim is that the court found that he was involved in a

fraud on the court. (Am. Compl. ¶ 48 (citing Sept. 12, 2012 Hr'g Tr. 71:4-7 ("I think the English agreement, quite frankly in the way it was presented to the [c]ourt, unfortunately rises to the level of a fraud upon the [c]ourt.")).) Additionally, Tung argues that the state court's finding that Mrs. Fou "was being manipulated through this divorce process" amounted to a sanction. (*Id.* ¶ 51 (quoting Sept. 12, 2012 Hr'g Tr. 71:11-15).)

As Tung correctly argues, the Third Circuit has held that judicial criticism against an attorney in an opinion or order "rising to the level of a public reprimand is a sanction" requiring the court to provide the attorney due process before rendering such an opinion. *Bowers v. NCAA*, 475 F.3d 524, 543 (3d Cir. 2007); (Am. Compl. ¶ 61.) In *Bowers*, the Third Circuit held that "[w]henever the district court imposes sanctions on an attorney, it must at a minimum, afford the attorney notice and opportunity to be heard." *Bowers*, 475 F.3d at 544 (internal quotation marks and citation omitted). In *Bowers*, the plaintiff's attorneys were involved in a years long litigation that involved discovery disputes and subsequent sanctions motions against the attorneys. *Id.* at 544. In the course of that litigation, the district court clearly and "explicitly stated that [it] was sanctioning not only [plaintiff] but also [plaintiff's] attorneys" for their failure to properly disclose discoverable information requested by defendants. *Id.* As Tung notes, the district court in *Bowers* "did not impose any additional monetary or disciplinary sanctions on [plaintiff's] attorneys beyond factual findings and language in the actual order that the conduct of those attorneys merited sanctions." *Id.* at 542. The attorneys appealed. *Id.* at 535.

The Third Circuit began its analysis by noting that there was "some disagreement among the courts of appeals" about precisely what kind of language in an opinion amounted to a sanction. *Id.* at 543. The Third Circuit noted, however, that "most courts agree that mere judicial criticism is insufficient to constitute a sanction." *Id.* The court observed that the central issue dividing the

8

courts of appeals was whether a factual finding that an attorney engaged in improper conduct is itself a sanction, or whether a court must enter an explicit order that the conduct was sanctionable. *Id.* The Third Circuit found that it need not decide that issue in *Bowers* because the district court clearly set out that it intended its reprimand to act as a sanction. *Id.* at 544. The Third Circuit found, accordingly, that the district court's explicit holding that it was sanctioning the *Bowers* attorneys violated the attorneys' due process rights, because they were denied notice and an opportunity to be heard. *Id.*

There are a number of factual and procedural distinctions between *Bowers* and the case at bar. First, in *Bowers*, the sanctioned lawyers were actively representing parties in the case in which they were sanctioned. "[W]hen a court imposes a sanction on an attorney" it is "exercising its inherent power to regulate the proceedings before it." *Nisus Corp. v. Perma-Chink Sys., Inc.*, 497 F.3d 1316, 1319 (Fed Cir. 2007). Unlike in *Bowers*, the court was not criticizing Tung's professional conduct in an effort to regulate the proceedings before it. As Tung acknowledges, at the time of the judge's criticism, he was no more than a subpoenaed "fact witness." (Am. Compl. ¶ 63.) Tung presents no case law suggesting that an attorney has a right to due process because he was criticized by a judge at a time when he was not practicing before that judge.

Second, the *Bowers* attorneys apparently sought to be heard on the district court's sanctions shortly after they were imposed. *See Bowers v. NCAA*, No. 97-2600, 2005 WL 5155198 (Mar. 21, 2005 D.N.J.) (sanctioning the *Bowers* attorneys), *rev'd*, 475 F.3d 524 (3d Cir. 2007). Here, as the State observes, Tung moved to be heard with respect to these alleged sanctions more than six years after the state courts' findings. (Am. Compl. ¶¶ 87-88; Defs.' Moving Br. 8.) Again, Tung cites no authority for the proposition that a state court violates due process by refusing to allow a non-party to be heard years after a finding that may have damaged the non-party's professional reputation.

Third, Tung has not directed the Court to statements finding that he engaged in sanctionable conduct. True, as Tung notes, the State court found that Mrs. Fou "was being manipulated," (Hr'g Tr. 71:11-15), and that there was "a fraud upon the Court," (Sept. 12, 2012 Hr'g Tr. 71:4-7). But Tung does not direct the Court to language in which State judges held that Tung engaged in this conduct. Indeed, taking these statements in context, a reader could just as easily conclude that the Court was condemning Mr. Fou's conduct throughout the divorce proceedings. The Court takes note of other statements in the 2012 state court hearing transcript setting aside the divorce judgment where the court found "there's a complete failure . . . to have independent counsel and there's an illusion of independent counsel, which is grossly misleading on its face." (Sept. 12, 2012 Hr'g Tr. 70:9-12.) Although this language likely did apply to Tung, the state court did not, however, hold that Tung's conduct in this regard was "sanctionable," let alone make an explicit ruling sanctioning Tung for these failings. *Cf. Bowers*, 475 F.3d at 544-45.

The Third Circuit has found that a court does not impose sanctions when it makes a mere "judicial admonishment" or "judicial criticism" of an attorney. *Venesevich v. Leonard*, 378 F. App'x 129, 131 (3d Cir. 2010). In *Venesevich,* in the course of making a ruling on the merits of a case, a district court wrote a footnote rebuking plaintiff's attorney for plagiarism in a brief. *Id.* The Court of Appeals held that this statement did not amount to a sanction. *Id.* at 131. The court noted that "the district court action in this case differs materially from the one in *Bowers*." *Id.* at 130. The court reasoned that all the district court had done was make an observation, if a highly critical one, about the attorney's conduct in the course of its opinion. *Id.* at 131. Thus, there was no ruling formally sanctioning the attorney, nor a holding that it intended to sanction the attorney, or even a specific finding that the attorney's conduct was sanctionable. *Id.* Thus, in *Venesevich*, there was no sanction under *Bowers* requiring notice and opportunity to be heard.

The New Jersey Superior Court's statements here more closely resemble those of the court in *Venesevich* than in *Bowers*. Here, the Superior Court described and criticized some of Tung's conduct in the context of its decision on the merits of the issue before it. The Court acknowledges that the Superior Court's criticisms were serious, especially with regard to its suggestion that Tung failed to provide Mrs. Fou with independent counsel. (*See* Sept. 12, 2012 Hr'g Tr. 64:11-65:4, 69:19-70:12.) Unlike in *Bowers*, however, the Superior Court did not formally sanction Tung in any way, nor did it make an express factual finding that the conduct was sanctionable. Rather, the court only generally discussed Tung's actions in the context of deciding the merits of the issue before it. Thus, the court did not undertake any of the actions that *Bowers* held could be a sanction, and rather only offered the type of judicial criticism that both *Bowers* and *Venesevich* held was insufficient to be a sanction. Indeed, federal courts have routinely rejected attorney-plaintiffs' claims along the lines of those brought by Tung. *See, e.g., Nisus Corp.,* 497 F.3d at 1321 (holding that "a finding of inequitable conduct is insufficient to confer appellate jurisdiction over an appeal by [an] aggrieved attorney"); *Keach v. Cnty. of Schenectady,* 593 F.3d 218, 225 (2d Cir. 2010) (finding that there were no sanctions where "the district court's comments were in the nature . . . of routine judicial commentary or criticism" (internal quotation marks omitted)). Accordingly, the Court finds that Tung has not alleged a constitutional violation because he has not alleged that he was sanctioned without notice and opportunity to be heard.

        **2.     Tung Does Not Allege That a Violation of Federal Law Is Continuing**

Even if Tung established that the New Jersey state courts criticized him to the point of sanctioning him, he would still need to establish that the constitutional violation was ongoing. *Christ the King Manor,* 730 F.3d at 318 ("Plaintiffs can . . . bring suit against state officers, but their remedies are limited to those that are designed to end a continuing violation of federal law").

Courts have described the "inquiry into whether the complaint alleges an ongoing violation of federal law" as "straightforward." *Surina v. S. River Bd. of Educ.*, No. 17-2173, 2018 WL 3617970, at *6 (D.N.J. July 30, 2018). Here, Tung's Amended Complaint fails to allege that the State's constitutional violation is ongoing.

*Surina* is instructive. There the plaintiff had a series of long-running disputes with local school officials regarding her child's care and education. *Id.* at *1-3. The disagreement culminated in the school district sending a social worker to plaintiff's home to check on the child. *Id.* at *3. Plaintiff alleged that the visit was retaliation for the past disputes and an abuse of process creating an ongoing violation of her constitutional rights. *Id.* at *6. The court found *Ex Parte Young* inapplicable because the complaint only plausibly alleged that the "isolated" initial visit by the social worker violated the Constitution, not that there was an ongoing violation of federal law. *Id.* The court further noted that there was "no reason to believe that such conduct . . . will repeat in the future." *Id.* Other cases in the District of New Jersey have come to similar conclusions in a variety of factual situations. *See, e.g.*, *Rich v. New Jersey*, No. 14-2075, 2015 WL 2226029 (D.N.J. May 12, 2015) (holding that *Ex Parte Young* was not satisfied because there was no ongoing violation of federal employment law where plaintiffs were already terminated); *Dinoia v. Cumbo*, No. 12-03175, 2015 WL 6739114 (D.N.J. Nov. 4, 2015) (finding no ongoing constitutional violation where the plaintiff only alleged a single prior illegal arrest); *see also Treistman v. McGinty*, 804 F. App'x 98, 100 (2d Cir. 2020) (holding that there was no ongoing constitutional violation where plaintiff's assertions that there would be future due process violations in court proceedings were "speculative").

Similarly, here, Tung only alleges isolated prior proceedings in which he was not allowed to be heard. He does not allege that that proceeding is ongoing. In fact, the State has afforded Tung

notice and opportunity to be heard regarding the ethical concerns at issue in the Fou divorce proceedings. For example, Tung participated in Mrs. Fou's subsequent malpractice suit and in related attorney disciplinary proceedings, the latter of which was ongoing at the time he filed his Amended Complaint. (Defs.' Moving Br. 2-3.) Aside from the past isolated proceedings in which Tung's arguably untimely motion to intervene was overruled, there is no allegation in the Amended Complaint that there are ongoing proceedings in which Tung is not being heard. Nor does Tung "allege any facts that plausibly showed (1) future proceedings would likely occur *and* (2) that such proceedings would be accompanied by any due process violations." *Treistman v. McGinty*, 804 F. App'x 98, 100 (2020). Thus, Tung does not state any constitutional injury that is ongoing.

Finally, courts have also held that the continuing effects of an isolated, prior constitutional violation do not constitute an ongoing constitutional violation. *See, e.g.*, *Jemsek v. Rhyne*, 662 F. App'x 206, 211 (4th Cir. 2016) (finding that while it may be unfortunate from plaintiff's perspective that a medical board's disciplinary findings have "continuing consequences[,] . . . invoking those effects does not transform past state action into an ongoing violation"). As in *Jemsek*, the fact that Tung alleges that he is still being harmed by the existence of the divorce court judgment in the public record does not demonstrate an ongoing violation under *Ex Parte Young*. Tung asks the Court to remove the "unconstitutional decisions or opinions from the public domain," thus at least implying an argument that his constitutional rights are being continuously violated by the ongoing existence of the opinion. (Am. Compl. ¶ 109.) But this allegedly ongoing injury is similar to the medical board actions at issue in *Jemsek*. Fundamentally, Tung's constitutional claim is that he was denied due process in a past proceeding that is now complete and final. The mere fact that the judgment emanating from the proceeding still has some diffuse effects does not change that fact.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Tung's procedural due process claims are barred by the Eleventh Amendment and do not properly fall within the *Ex Parte Young* exception to Defendants' immunity to suit. Thus, the Court will dismiss Tung's Amended Complaint with prejudice.

/s/ Michael A. Shipp

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE